UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



| | | |
|---|---|---|
| ANDREA RAMOS PAREDES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-04672 |
| | § | |
| WAL-MART STORES TEXAS, LLC, | § | |
| AND WALMART, INC. | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before this Court is Defendant Wal-Mart Stores Texas, LLC's ("Wal-Mart")[1] Motion for Summary Judgment (Doc. No. 13). Plaintiff Andrea Ramos Paredes ("Ramos") responded (Doc. Nos. 19, 21, 22), and Wal-Mart replied (Doc. No. 20). Upon close consideration of the pleadings, relevant legal standards, and summary judgment evidence, the Court hereby **GRANTS** Wal-Mart's Motion for Summary Judgment (Doc. No. 13) and dismisses this case with prejudice.

### I.    Factual Background

This case arises from an incident at a Wal-Mart store in Houston, Texas. On October 24, 2022, Ramos slipped and fell on a liquid substance in the detergent aisle of a Wal-Mart store. (Doc. No. 19 at 11). After she fell, Ramos stated that she was able to determine that the liquid was

---

[1] Plaintiff Andrea Ramos Paredes filed this lawsuit against Wal-Mart Stores Texas, LLC and Walmart, Inc. (Doc. No. 1-2). The Original Answer was filed on behalf of both entities, (Doc. No. 1-2 at 9), but the Motion for Summary Judgment later represents to this Court that Wal-Mart Stores Texas, LLC was "incorrectly sued as Walmart, Inc." (Doc. No. 16). For the purposes of this Order, the Court refers to both entities collectively as "Wal-Mart."

laundry detergent because "[she] got it on [her] clothes . . [and] was able to smell it." (*Id.* at 13). Ramos further observed that while she did not notice the liquid before she fell, she later noticed that the liquid was "dirty" and "it had smudges on it." (*Id.*). Ramos alleges that she suffered back and neck injuries from the incident. (*Id.* at 14-16).

On October 23, 2024, Ramos filed this lawsuit against Wal-Mart in Harris County, Texas state court. (*Id.* at 1). Wal-Mart then timely removed the case to this Court based on diversity jurisdiction. (Doc. No. 1). Ramos brought causes of action against Wal-Mart based on premises liability, negligent activity, negligent hiring, training, and supervising, and *respondeat superior*. (Doc. No. 1-2). On March 2, 2026, Wal-Mart filed a Motion for Summary Judgment (Doc. No. 12), requesting the Court to find that Ramos has failed to establish a genuine dispute of material fact to support any of her claims and to dismiss this case with prejudice. For the reasons set forth below, the Court **GRANTS** the Motion for Summary Judgment (Doc. No. 12).

## II.   Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.    Analysis

Ramos brought causes of action against Wal-Mart based on premises liability, negligent activity, negligent hiring, training, and supervising, and *respondeat superior*. (Doc. No. 1-2). While Ramos listed each of these theories as separate causes of action, these allegations fall into two categories: general negligence and premises liability. *See Cobarrubias v. Lowe's Home Centers, LLC*, 2023 WL 5729941, at *5 (S.D. Tex. Sept. 4, 2023) (citing *Clayton W. Williams Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997)). The Court addresses each of these causes of action, in turn, and grants summary judgment on all claims against Wal-Mart.

### A. Negligence

Ramos alleges that Wal-Mart owed a duty to use ordinary care to "protect people from dangerous activities" and that Wal-Mart "failed to warn [Ramos] of the dangerous activity that caused the injuries." (Doc. No. 1-2 at 4). Ramos also alleges that Wal-Mart failed to "exercise reasonable care in hiring, training, supervising," and that Wal-Mart is "vicariously liable for the negligence of its agent . . . under the theory of *respondeat superior*." (*Id.* at 4-5). While not

3

the "model of clarity," *see Harvey v. Montiel*, No. 25-40127, 2026 WL 483286, at *1 (5th Cir. Feb. 20, 2026), the Court interprets these allegations to be separate theories of general negligence.

Generally, there are two negligence-related theories upon which a plaintiff may recover from a premises owner: general negligence and premises liability. Although a person injured on another's property may have both a negligence claim and a premises liability claim against the property owner, the two are "independent theories of recovery, and a finding of one will not suffice to create liability for the other." *Cobarrubias*, 2023 WL 5729941, at *5 (citing *Olivo*, 952 S.W.2d at 527). "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775–76 (Tex. 2010). As such, when an injury is the result of a condition created by the defendant's activity, rather than the activity itself, a plaintiff is limited to a premises defect theory of liability. *Brown v. Wal-Mart Stores Texas, L.L.C.*, 2023 WL 4354225, at *2 (S.D. Tex. July 5, 2023) (citing *Lucas v. Titus County Hosp. Dist./Titus County Mem'l Hosp.*, 964 S.W.2d 144, 153 (Tex. App.—Texarkana 1998, pet. denied), 988 S.W.2d 740 (Tex. 1998)).

In this case, Wal-Mart argues that Ramos's claims arise from a condition of the store— not any "contemporaneous, negligent activity occurring at the time of the fall." (Doc. No. 16 at 3). Specifically, Wal-Mart contends that because Ramos only alleges that she fell due to liquid on the floor, Ramos has failed to establish any genuine issue of material fact that the store was negligent. (*Id.*). Ramos does not address this argument (or even address her

4

negligence claim at all) in either of her responses, (Doc. Nos. 19, 21), which constitutes waiver. *See Casper v. City of Lago Vista*, 177 F.3d 977 (5th Cir. 1999) ("Of course, failure to brief and argue an issue constitutes waiver."). Setting aside the waiver, the Court nonetheless finds that there is no evidence of any specific contemporaneous, negligent act or omission taken by Wal-Mart or its employees, nor is there evidence that Wal-Mart was negligent in hiring, training, or supervising its employees. Instead, the Court finds that the condition of the premises (the liquid on the floor) caused this incident, which clearly falls within the well-established scope of a premises liability claim. Therefore, in addition to not bringing forth any evidence to support this claim, Ramos is not entitled to bring a negligence claim, under any theory, including negligent training or supervision or *respondeat superior*, as a matter of law. Wal-Mart's Motion for Summary Judgment (Doc. No. 16) is granted as to Plaintiff's negligence claim.

### B. Premises Liability

The Court turns next to the premises liability claim. Ramos alleges that Wal-Mart "owed [Ramos] the duty to inspect and maintain the premises in a reasonably safe manner," and failed to adequately do so. (Doc. No. 1-2 at 3). Ramos alleges that "[t]he liquid substance on the floor created a foreseeable risk of harm to all that would walk around the store" and that Wal-Mart "knew or reasonably should have known of the condition of the premises." (*Id.* at 4). Ramos alleges that the breach of the duty to inspect and maintain the premises caused her injuries. (*Id.*). To succeed on a premises liability claim, Ramos must prove four elements: (1) that Wal-Mart had actual or constructive knowledge of the condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that Wal-Mart failed to exercise reasonable care to reduce or

5

eliminate the risk; and (4) that Wal-Mart's failure to use such care proximately caused her injuries. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

Wal-Mart argues that Ramos does not have evidence to raise a fact issue for the first element of premises liability: that Wal-Mart had actual or constructive knowledge of the condition of the premises. To establish the element of actual or constructive knowledge, there must be evidence to support that: (1) Wal-Mart placed the substance on the floor; (2) Wal-Mart actually knew the substance was on the floor prior to the incident and negligently failed to remove the substance; or (3) it was more likely than not that the substance was on the floor long enough to give Wal-Mart a reasonable opportunity to discover the substance. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 265 (Tex. 1992).

Wal-Mart alleges that Ramos has failed to present any evidence that "any Wal-Mart employee knew of the condition on the floor, was aware that a condition on the floor in any way that presented a hazard or was aware of any prior incident involving a condition on the floor prior to [the] incident." (Doc. No. 16 at 4). In response, Ramos impliedly concedes Wal-Mart's point regarding actual knowledge, as she only argues that Wal-Mart had constructive knowledge of the condition. *See* (Doc. No. 19). Thus, the Court will only address whether Ramos has raised an issue of material fact as to Wal-Mart's constructive knowledge of the condition on the floor.

To demonstrate constructive knowledge, Ramos must show that it is more likely than not that the substance was present on the floor long enough to give Wal-Mart a reasonable opportunity to discover and remove the substance in the exercise of ordinary care. *Keetch*, 845 S.W.2d at 265. This "time-notice" rule is based on the assumption that temporal evidence best indicates whether the premises owner had a reasonable opportunity to discover and remedy a dangerous condition. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002). "[T]here must be some proof

6

of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.* In determining whether a premises owner had constructive knowledge, a court may consider a combination of (i) the length of the time the hazard existed, (ii) the proximity of employees to the hazard, and (iii) the conspicuousness of the hazard. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006). "[M]ere proximity of an employee to a spill, without evidence of when or how it came to be on the floor, [is] legally insufficient to charge a premises owner with constructive notice of the hazard." *Id.* at 567 (citing *Reece*, 81 S.W.3d at 816–87).

## 1. Length of Time

The Court first considers the evidence regarding "the length of time the hazard existed." *Spates*, 186 S.W.3d at 567–68. While Ramos contends that the fact that "the substance was dirty" is enough circumstantial evidence to create a fact issue that the "condition existed long enough to be discovered," (Doc. No. 19 at 3), Wal-Mart contends that "[t]here is no evidence as to how long the alleged condition has been on the ground, and there is no evidence to support an inference that [Wal-Mart] had a reasonable opportunity to discover and fix this alleged condition." (Doc. No. 16 at 7).

First, Wal-Mart relies on a 57-minute surveillance video of the area of the incident to argue that "[t]he fact that twenty-three customers traversed the area in the twenty-one minutes preceding the incident without incident strongly undermines any claim that the alleged condition was present for a sufficient duration to place [Wal-Mart] on constructive notice." (*Id.* at 8). Wal-Mart argues if the liquid on the floor "had existed for an appreciable length of time, some evidence of disruption, avoidance, or reporting would be expected." (*Id.*). While the actual incident was not captured on camera, the video shows customers passing through the aisle where the incident

7

occurred for nearly thirty minutes before the incident. *See* (Doc. No. 16-2, 16-3) (providing screenshots of each customer that was near the scene of the incident). Wal-Mart emphasizes, and the video confirms, that none of these nearby customers appeared to notice the liquid or take any action to alert a Wal-Mart employee. (*Id.*).

Wal-Mart argues that Ramos's deposition testimony (or lack thereof) aligns with this series of events. When Ramos was asked about the origin of the liquid, Ramos stated that she thought "it might have been from one of the detergent bottles, that it was possible cracked," but that she did not see a cracked bottle or have any further information as to how the liquid got on the floor. (Doc. No. 16-1 at 20). Furthermore, Ramos testified that she did not know "if the liquid substance was on the floor for ten minutes [or] for ten seconds." (*Id.* at 21). Wal-Mart argues that the combination of the surveillance video and Ramos's deposition testimony show that there is no evidence to create a genuine dispute of material fact that Wal-Mart had constructive notice of the liquid.

Ramos, on the other hand, argues that "[t]he presence of dirt, smudging, and tracking" through the liquid creates a genuine dispute of material fact that the condition existed for long enough to give Wal-Mart a reasonable opportunity to discover it. (Doc. No. 19 at 3). Ramos testified:

**Q: Do you have any idea how long the liquid substance was on the floor?**

A: For a while.

**Q: How long is a while?**

A: I do not know.

**Q: A while, 20 minutes?**

A: I do not know exactly.

**Q: How do you know the liquid substance was on the floor for a while?**

8

A: Because it was dirty.

**Q: Can you describe the liquid substance to me. You said it was dirty. Describe it, please.**

A: I wouldn't know how to describe it. It was dirty, like it was – it had smudges on it.

**Q: Can you describe the smudges?**

A: It could have been from somebody who walked through there.

**Q: So did the smudges look like footprints?**

A: I think so.

(Doc. No. 19 at 13). Ramos argues that this testimony is enough evidence to create a genuine dispute of fact that Wal-Mart was on constructive notice of the liquid on the floor.

While Texas law does not require Ramos to provide direct evidence to prove this temporal element, the Supreme Court of Texas has consistently required more evidence than the "dirt" or "smudges" to satisfy this element of constructive notice. In *Wal-Mart Stores, Inc. v. Gonzalez*, the Supreme Court of Texas was presented with nearly identical facts to determine "whether Wal-Mart had constructive knowledge of the spilled macaroni." 968 S.W.2d 934, 936 (Tex. 1998). "[A]s evidence that the macaroni had been on the floor for a prolonged period of time, [the plaintiff] testified that the macaroni . . . [was] contaminated with 'a lot of dirt.'" *Id.* Further, the plaintiff's daughter "testified that the macaroni had footprints and cart track marks in it and [that it] 'seemed like it had been there a while.'" *Id.* Examining the sufficiency of this evidence, the court held that "[d]irt in macaroni salad lying on a heavily-traveled aisle is no evidence of the length of time the macaroni had been on the floor" and "[t]hat evidence can no more support the inference that it accumulated dirt over a long period of time than it can support the opposite

9

inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle." *Id.* Ultimately, the court rejected the "dirt and track" theory, holding that "the evidence that the macaroni salad had 'a lot of dirt' and tracks through it and the subjective testimony that the macaroni salad 'seemed like it had been there awhile' is no evidence that the macaroni had been on the floor to charge Wal-Mart with constructive notice of this condition." *Id.* at 938.

This case is no different. Ramos only offers her description of the liquid as "dirty" with "smudges on it" and her speculative assessment that the liquid was on the floor "for a while" to show that it was more likely than not that the liquid was on the floor for long enough to put Wal-Mart on constructive notice of the condition. (Doc. No. 19 at 13). The Court finds that this evidence even falls short of the evidence presented in *Gonzalez*. In *Gonzalez*, there was evidence that there were tracks from shopping carts through the macaroni, in addition to the dirt and smudges. Considering both the tracks and the dirt, the Supreme Court of Texas held that evidence was insufficient to support a premises liability claim. Following the holding in *Gonzalez*, the Court finds that the evidence presented in this case (which does not include tracks from shopping carts) is insufficient to create a genuine dispute of material fact that Wal-Mart was on constructive notice of the liquid on the floor.

### 2. Remaining Factors

The Court may also consider "the proximity of employees to the hazard" and "the conspicuousness of the hazard" to determine whether Wal-Mart was on constructive notice of the liquid on the floor. Wal-Mart argues that while "an employee is visible on surveillance working on a display in the adjacent aisle," "the employee is never seen entering the aisle where the incident occurred." (Doc. No. 16 at 8). Wal-Mart also contends that there is no evidence that the liquid was

10

"a visible, obvious hazard for a prolonged period." (*Id.*). Ramos does not address these arguments in her response or provide any evidence that would create a genuine dispute of material fact that Wal-Mart had constructive notice of the liquid on the floor.

After considering all three prongs of constructive knowledge, the Court finds that Ramos has failed to create a genuine dispute of material fact that Wal-Mart had constructive notice of the liquid on the floor. Without sufficient evidence to create a genuine dispute of material fact on actual or constructive notice, Ramos's premises liability claim fails as a matter of law. Accordingly, Wal-Mart's Motion for Summary Judgment (Doc. No. 16) is granted as to Ramos's premises liability claim.

## C. Failure to Maintain or Inspect

Wal-Mart contends that Ramos's failure to maintain claim[2] fails as a matter of law because "Texas courts have held that failure to inspect claims fail absent any evidence of constructive notice." (Doc. No. 16 at 8). Wal-Mart relies on *Richardson v. Wal-Mart Stores, Inc.*, another slip and fall case against Wal-Mart, to argue that "[a]bsent evidence of the length of time that the substance had been on the floor, there can be no inference that any increased level of inspecting or cleaning by Wal-Mart would have discovered and remedied the condition." 963 S.W.2d 162, 166 (Tex. App.—Texarkana 1998, no pet.). Ramos does not address this argument (or her failure to

---

[2] As the Court has noted, the Original Petition is not the model of clarity. While the failure to maintain claim is not set out separately from the other causes of action, the Petition alleges (under the premises liability claim) that the "Defendants had a duty to use ordinary care to ensure that the premises did not present a danger to Plaintiff. This duty includes the duty to inspect and/or the duty to warn and/or the duty to cure. Defendants breached their duty of care by both failing to inspect; make the condition reasonably safe; and/or failing to adequately warn Plaintiff of the dangers of the detergent spill." (Doc. No. 1-2 at 4). While Ramos never recognizes or addresses the failure to maintain claim, Wal-Mart requests this Court to find that the failure to maintain claim fails as a matter of law. To the extent to claim was adequately pleaded in the Original Petition, the Court proceeds with that analysis and find that the claim fails as a matter of law.

11

maintain claim at all) in her responses. *See* (Doc. Nos. 19, 21). As discussed above, the Court finds that Ramos failed to present sufficient evidence of the length of time that the liquid was on the floor or that Wal-Mart had constructive notice of the condition. Following the direction of the well-established Texas law, the Court finds that without evidence of constructive notice, Ramos's failure to maintain or inspect claim also fails as a matter of law. *See Richardson*, 963 S.W.2d at 166. Accordingly, Wal-Mart's Motion for Summary Judgment (Doc. No. 16) is granted as to Ramos's failure to maintain claim.

## IV.    Conclusion

For the foregoing reasons, the Court grants Wal-Mart's Motion for Summary Judgment (Doc. No. 16) on each of the cases of action. The Court dismisses this civil action with prejudice and will enter a separate judgment compliant with Federal Rule of Civil Procedure 58(a).

Signed on this 1st day of July 2026.

Andrew S. Hanen
United States District Judge